IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

UNITED STATES OF AMERICA

vs.

IRVING ERNESTO ARIAS

NO.1:19-CR-00014-MAC-ZJH

**REPORT AND RECOMMENDATION DENYING**
**MOTION TO WITHDRAW GUILTY PLEA**

Pending before the court is *pro se* Defendant, Irving Ernesto Arias's, *Motion to Withdraw Plea of Guilty*. (Doc. No. 323.) Because Arias has not established a "fair and just reason" for withdrawing his guilty plea, the motion should be denied.

## I. Background

On January 9, 2019, Arias was charged by Indictment with a violation of 21 U.S.C. § 846, conspiracy to possess with the intent to distribute fifty (50) grams or more of actual methamphetamine. (Doc. No. 2.) On June 3, 2020, Arias appeared before United States District Judge Marcia Crone and entered a plea of guilty to Count One of the Indictment pursuant to a plea agreement. (Doc. No. 310.) Arias signed and agreed to a *Factual Basis* which summarized his involvement in the instant offense. (Doc. No. 313.) He was subsequently remanded to the custody of the United States Marshals Service pending sentencing.

On June 26, 2020,[1] Arias filed his motion to withdraw guilty plea.[2]   On July 27 and 28,

the Government filed its response and amended response, respectively, opposing Arias's motion

to withdraw.  (Doc. Nos. 318, 319.)  On September 3, 2020, the undersigned conducted a *Faretta*

hearing and allowed Arias to proceed *pro se*.   (Doc. No. 327.)   The undersigned appointed

Dustin Galmor as standby counsel.  (*Id.*)  On September 23, 2020, the undersigned held a hearing

on the *Motion to Withdraw Guilty Plea* in which standby counsel was present.  At the conclusion

of the hearing, the undersigned took the pending motion under advisement.

## II.     Motion to Withdraw Guilty Plea

A defendant has no absolute right to withdraw a guilty plea before the imposition of

sentence.  *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003*); accord United States v.*

*Minor*, 714 F.3d 319, 321 (5th Cir. 2013).  Rather, the decision to allow a defendant to withdraw

his plea is within the sound discretion of the district court.  *Id.,* at 370; *accord United States v.*

*London*, 568 F.3d 553, 562 (5th Cir. 2009).  To determine whether a defendant may withdraw a

plea of guilty prior to sentencing, the court must consider the following factors:  (1) whether the

defendant has asserted his innocence; (2) whether the government would suffer prejudice if the

withdrawal motion were granted; (3) whether the defendant has delayed in filing his withdrawal

motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether

close assistance of counsel was available; (6) whether the original plea was knowing and

voluntary; and (7) whether the withdrawal would waste judicial resources.  *United States v. Carr*,

740 F.2d 339, 343-44 (5th Cir. 1984); *accord United States v. Urias-Marrufo*, 744 F.3d 361, 364

---

[1] Arias signed the motion on June 26 but it is postmarked June 29, 2020.  The Clerk's office received and docketed the motion on July 1, 2020.  For purposes of this report, the undersigned will use the signature date as the date of filing.

[2]  On August 10, 2020, Arias filed his memorandum in support of the motion to withdraw guilty plea. (Doc. No. 323.)  The undersigned will consider both together when referring to the original motion.

(5th Cir. 2014); *United States v. McKnight*, 570 F.3d 641, 645-46 (5th Cir. 2009).  "The district court is not required to make findings as to each of the *Carr* factors."  *United States v. Brewster*, 137 F.3d 853, 858 (5th Cir.), *cert. denied*, 525 U.S. 908 (1998).  "The decision to permit or deny withdrawal is based on the totality of the circumstances."  *Id.*; *see also Urias-Marrufo*, 744 F.3d at 364.  "The defendant bears the burden of establishing a fair and just reason for withdrawing his plea."  *Powell*, 354 F.3d at 370; *accord London*, 568 F.3d at 563.  After reviewing the record and considering the arguments of the parties both in the pleadings and at the hearing, the undersigned finds that none of the *Carr* factors weigh in Arias's favor and that the motion should be denied.

        A.      *Carr* Factor One—Assertion of Innocence

This factor weighs against withdrawal.  During the guilty plea hearing, Arias was placed under oath and admonished that if he answered any of the questions falsely, his answers could later be used against him in another prosecution for perjury or making a false statement.  (Doc. No. 336, pp. 3-4.)  The court advised Arias that if he desired to change his guilty plea at any time during the hearing, he would be permitted to do so.  (*Id*. at p. 5.)  Arias confirmed that he understood he had the right to plead not guilty to any offense charged against him and to persist in that plea.  (*Id*. at p. 11.)  When asked to state in his own words what he did that made him guilty of the offense, Arias replied that he sold 42.93 kilograms of actual methamphetamine.  (*Id*. at pp.17-18.)  Right before entering his guilty plea, Arias declined the court's invitation to ask any questions about the charge, his rights, sentencing possibilities or anything else regarding the case.  (*Id*. at p. 18.)  Then, right after his guilty plea, Arias agreed that he was pleading guilty because he was, in fact, guilty.  (*Id*. at p.19.)

Arias also signed a *Factual Basis and Stipulation* in support of his guilty plea to Count One of the Indictment. (Doc. No. 313.) According to the *Factual Basis*, Title III wire intercepts and personal surveillance can confirm several instances where Arias acted as a drug and money courier for several of the co-conspirators. Specifically, the *Factual Basis* details the following incident on June 4, 2018:

> [A]gents intercepted calls between Bradford and Cardenas where they discussed Cardenas purchasing an airplane (code word for vehicle) but putting it in Bradford's name and that this vehicle would be filled with narcotics and that Bradford and Paula Bear would drive it to Atlanta, Ga. On June 5, 2018, agents conducted surveillance on Bradford at his place of employment, the Family Dollar store on S. Post Oak, Houston, Tx and observed Cardenas and **Arias** arrive in a Ford Ranger at the Family Dollar store and meet with Bradford. All three then drove in the Ford Ranger to a Buick dealership and then met with an unknown female at a Jack-in-the-Box to look at a Ford Explorer. Agents then observed Bradford and **Arias** removing the stock gas tank on the Explorer and replace it with a modified tank that was used to store approximately 16 gallons of liquid methamphetamine. Later, the Explorer traveled to an apartment in west Houston, where Bradford was observed picking up a female, later identified as Paula Bear, and then begin heading east-bound on IH 10. The Explorer was stopped on traffic violations by the Jefferson County, Tx. Sheriffs Department and a drug-certified K-9 alerted to the presence of narcotics in the vehicle. A search of the vehicle revealed approximately 100 pounds (approximately 45 kilograms) of liquid methamphetamine inside a modified gas tank on the Ford Explorer. Two samples were submitted to the DEA South Central Lab for analysis while the remaining substance was destroyed pursuant to the DEA protocol. The samples were determined to be methamphetamine of a purity of 53% and 91%, respectively. Therefore, the amount of methamphetamine actual seized by law enforcement was 32.4 kilograms of methamphetamine actual.

(Doc. No. 313.)

The *Factual Basis* further states that "Irving Ernesto Arias was a member of this drug conspiracy. Arias agreed with others named and unnamed in this indictment to distribute quantities of methamphetamine 'actual.' Based upon Title III wire intercepts, and observations of law enforcement officers, as well as seizures in this case, Irving Ernesto Arias is personally

responsible for the possession with intent to distribute and/or the distribution 42.93 kilograms of methamphetamine 'actual' as part of this conspiracy."  Right above Arias's signature on the *Factual Basis* is a paragraph that reads: "I have read this Factual Basis and Stipulation and the Indictment or have had them read to me and have discussed them with my attorney. I fully understand the contents of this Factual Basis and Stipulation and agree without reservation that it accurately describes the events and my acts."  During the guilty plea hearing, Arias agreed to the Government's summary of the *Factual Basis*, agreed with its terms and offered no changes to it. (Doc. No. 336, p. 16.)

Despite Arias's sworn testimony admitting facts making him guilty of the offense, he now claims in his motion that he is innocent of the charges.  In summary, Arias attempts to cast doubt on each paragraph of the *Factual Basis* arguing they were conclusory, there is a lack of surveillance footage, that he was unwittingly delivering narcotics that he mistakenly believed was a gift, and that his involvement in the gas tank modification was innocent as he was only there to inspect the vehicle due to his background in car mechanics.  (Doc. No. 323, pp. 8-11.) Arias's post-guilty plea assertions of innocence carry no weight.  First, they are completely inconsistent and contrary to his statements made under oath during the guilty plea hearing before the district court and in the *Factual Basis*.  Second, in the same motion to withdraw his guilty plea, he makes three separate admissions of guilt:  "[I] was a mechanic and driver, a minor participate [sic] in the overall conspiracy, not a leader or organizer, as the counsel advised [me], [and] the factual basis impl[ies.]"  (Doc. No. 323, p. 9); "If anything [I] was a minor participant in an unknown criminal conspiracy."  (*Id.* at p. 15); "[I] was a minor participate [sic] at best and not personally responsible for 42.93 kilograms of actual meth, nor part of a conspiracy" (*Id.* at p. 11).

During the hearing on his motion to withdraw his guilty plea, Arias also cited to alleged inconsistent statements in the Factual Bases among himself and co-defendants Ronald Bradford and Isais Juarez that undercut the Government's "theory of the case." "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." FED. R. CRIM. P. 11(b)(3). The factual basis for the guilty plea "must appear in the record ... and must be sufficiently specific to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal." *United States v. Castro-Trevino*, 464 F.3d 536, 540 (5th Cir. 2006) (quoting *United States v. Oberski*, 734 F.2d 1030, 1031 (5th Cir. 1984)). The purpose of Rule 11(b)(3) is to ensure the factual conduct to which the defendant admits is sufficient as a matter of law to constitute a violation of the statute. *United States v. Marek*, 238 F.3d 310, 314 (5th Cir. 2001) (en banc).

The purpose of a factual basis is not to require the Government to provide a unitary "theory of the case" among all co-defendants. Instead, its function is to provide a sufficient factual basis to support that particular defendant's guilty plea. In addition to admissions made during the guilty plea colloquy, one method used in this District to help fulfill the Rule 11(b)(3) requirements is a written factual basis for the plea. Because each written factual basis is tailored to the pleading defendant's conduct that makes them guilty of the offense, it should be unsurprising that there would be a variation among defendants in the same criminal action. For example, Arias's *Factual Basis* goes into more detail concerning his involvement in the gas tank modification than in Bradford's *Factual Basis* and in the amount of actual methamphetamine recovered in the modified gas tank. (*Compare* Doc. No. 169, p. 5 and Doc. No. 313, p. 6.) Otherwise, the two factual bases are practically identical. Similarly, the factual bases between Arias and Juarez is almost exactly the same, apart from Arias's *Factual Basis* going into more

detail of his personal role in the delivery of methamphetamine on March 26, 2018, and in the gas

tank modification.  (*Compare* Doc. No. 313, p. 4 and Doc. No. 160, p. 4.)  In total, all three

factual bases are consistent, fulfill the Rule 11(b)(3) requirements, and do not give any indication

of Arias's innocence of the offense to which he pleaded guilty.

A defendant's assertion of actual innocence alone, without supporting evidence, is

insufficient to warrant allowing withdrawal under *Carr*.  *United States v. Harrison*, 777 F.3d

227, 235 (5th Cir. 2015).  Furthermore, the mere assertion of innocence, absent a substantial

supporting record, will not be sufficient to overturn a denial of a motion to withdraw.  *United

States v. Clark*, 931 F.2d 292, 295 (5th Cir. 1991), (citing *Carr*, 740 F.2d at 344).  For the

reasons illustrated above, Arias has not made this showing, and this *Carr* factor weighs against

his ability to withdraw his guilty plea.[3]

      B.      *Carr* Factors Two, Four, and Seven—Prejudice to the Government,
               Inconvenience to the Court, and Waste of Judicial Resources

The second *Carr* factor considers whether the government would be prejudiced if Arias's

motion were granted.  This factor is closely intertwined with factor four—whether the court

would be substantially inconvenienced, and factor seven—whether the withdrawal would waste

judicial resources.  Therefore, these factors will be analyzed together.  *See United States v.

Rodriguez*, No. 3:08-CR-267-D, 2010 WL 286730, at *4 (N.D. Tex. Jan. 22, 2010), *aff'd*, 411 F.

App'x 713 (5th Cir. 2011).

Arias did not address whether there is any prejudice to the Government, however the

Government argues it would be prejudiced because it would require substantial resources and

---

[3] Arias filed a *Motion to Compel Previously Filed Motions* in which he asks the court to compel his former attorney to turn over his file to assist him at the hearing to withdraw his guilty plea.  (Doc. No. 333.)  However, he has not proffered anything that would be in his attorney's file that would indicate his innocence or otherwise assist him in this motion.

time to secure the appearance of the various co-defendant witnesses that are already incarcerated. (Doc. No. 319, p. 12.)  There are nine codefendants in this case.  Perhaps all of them will not need to testify at trial, however they have all been convicted and sentenced.  According to bop.gov, four co-defendants are located in three separate federal prisons.  The remaining co-defendants, all of whom have lengthy sentences, are listed as not currently in BOP custody.  This is most likely attributed to serving unexpired state sentences or awaiting a federal prison designation.  Either way, it still presents onerous logistical concerns to secure their attendance.

Granting Arias's motion would also inconvenience the court and waste judicial resources. Arias claims a guilty plea withdrawal would not substantially inconvenience the court because due to the ongoing pandemic, the court has dramatically cut back on its case load, there are less trials, less actual appearances by prisoners, and an increase of video hearings.  (Doc. No. 323, p. 16.)  This is inaccurate.  The Eastern District of Texas is no longer conducting criminal proceedings by video as the General Order providing that alternative expired on May 31, 2020. *See* GO-20-09, Regarding Extension and Modification of Prior General Orders.  Moreover, since the beginning of the June 2020, the Eastern District has conducted approximately fifteen jury trials.  Judge Crone's November 2020 trial docket currently has eight different cases set for trial, not counting a special trial setting.  Rescheduling this case would disrupt the court's existing docket and expend additional judicial resources for a trial, time that would otherwise be available to protect "the rights of other accused persons awaiting trial, whose cases may lose . . . their position on the calendar."  *Carr*, 740 F.2d at 346 (internal quotations omitted).  Therefore, considering that the government and the court would be inconvenienced by a withdrawal of Arias's guilty plea and that allowing withdrawal would be a waste of judicial resources, *Carr* factors two, four, and seven weigh in favor of denial.

C.      *Carr* Factor Three—Timeliness of Withdrawal Motion

The third *Carr* factor, *i.e.*, whether Arias delayed in filing his motion to withdraw, also weighs against granting his motion.  Arias pleaded guilty on June 3, 2020.  Arias's motion to withdraw his guilty plea is signed on June 26—over a three-week delay.  (Doc. No. 314, p. 4.) Arias does not explicitly explain his delay, but generally complains in the motion to withdraw of displeasure with his attorney, that he was unaware of the consequences of his plea, and his actual innocence.    (Doc. No. 314.)    These statements are repeatedly contradicted by his sworn testimony at the guilty plea hearing, and the district court provided Arias every opportunity to address these matters at that time.  Yet, Arias cannot point to any event in the three weeks after he entered his guilty plea that provides a "fair and just reason" to withdraw the plea.  Therefore, this *Carr* factor also does not favor withdrawal.  *See Carr*, 740 F.2d at 345 ("The purpose [of withdrawing a guilty plea] is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty); *United States v. Harrison*, 777 F.3d 227, 237 (5th Cir. 2015) (withdrawal motion five weeks after pleading guilty was not "promptly filed").

D.      *Carr* Factor Five—Close Assistance of Counsel

The court finds nothing in the record to indicate that Arias has not had close and effective assistance of counsel throughout this proceeding.  According to their contract, Arias retained attorney Billy Skinner to represent him on September 5, 2019.  (Doc. No. 323, Ex. 1.)  Mr. Skinner appeared with Arias at his arraignment on February 4, 2020.  Prior to filing the motion to withdraw, there is nothing in the record to indicate any dissension between Arias and his counsel.  During the change of plea hearing, Arias stated he discussed with Mr. Skinner the facts of the case, charges pending against him, any possible defenses he may have and his decision to

plead guilty.  (Doc. No. 336, p. 4.)   He further stated he was satisfied Mr. Skinner fully considered these factors and that he was "fully satisfied" with his representation and advice given to him in this case.  (Doc. No. 336, pp. 4-5.)

Nevertheless, Arias raises numerous issues with Mr. Skinner's representation.  First, Arias argues generally that he failed to review discovery with him, did not explain the factual basis of his guilty plea, did not advise him what the government had to prove or the elements of the offense, and did not explain all of the rights he was waiving by pleading guilty.  As stated previously, Arias confirmed under oath he discussed the facts of the case with his attorney.  The *Factual Basis* states right above Arias's signature that he reviewed it with his attorney.  (Doc. No. 313, p. 7.)  Even if Mr. Skinner did not review the elements of the offense with Arias, the court did so at the guilty plea hearing and gave Arias the opportunity for further explanation from his attorney.  (Doc. No. 336, p. 6.)  Finally, the court made sure Arias understood all the constitutional rights he was waiving by pleading guilty.  (Doc. No. 336, p.11.)  The waiver also appears in the first paragraph of his plea agreement, which he also stated he understood at the change of plea hearing.  (Doc. No. 336, pp. 12, 14.)

Second, Arias also complains about a lack of communication with Mr. Skinner, specifically the fact that Mr. Skinner did not personally visit with him from arraignment in February until May 22, 2020—approximately two weeks before entering his guilty plea.  (Doc. No. 323, p. 2.)  While not ideal, the lack of personal consultation is understandable given the various lock-down measures and jail restrictions during the pandemic.  Mr. Skinner filed several motions for continuance during this period to provide more time to review discovery and visit with Arias, but the last motion for continuance was denied by the court.  (Doc. No. 308.)  Within a few days of that denial, Mr. Skinner sent the following text to one of Arias's family members:

> "Good morning.  I met with Irving for a long time last Friday [May 22].
> We went over every element of his case, the evidence and what had
> happened to every other person charged in this case.  At the conclusion of
> our meeting and all the discussion (Irving had done a lot of his own
> homework and had a very good grasp of the situation) we went over the
> plea documents very carefully.  Irving signed the plea documents and late
> Friday I informed the court.  Although not confirmed it looks as though
> the plea will be Wednesday, June 3 in the afternoon."

(Doc. No. 323, Ex. B, 13.)

Within a week of Arias filing his *pro se* Motion to Withdraw Plea of Guilty, Mr.

Skinner sent him a letter that in part reads:

> "At the time you made your plea you had in fact been made aware of the
> events of the case and the investigation I had done. I showed you, in
> person, the entire notebook of my investigation. I offered you the
> opportunity to review the entire file containing every written report turned
> over by the Government Prosecutor. Additionally, I informed you that I
> had done my own summary of events regarding the case and we compared
> them to the factual basis. The video and text elements of your case were
> summarized in the written reports I went over with you. You and I
> discussed very specific dates and times where you were on video or texts
> were sent. You were made aware of the events of your case in detail.
> Additionally, I reviewed with you the sentences of EVERY co-defendant
> in the case who had already pled guilty. Not one of your co-defendants
> went to trial. I also reviewed the sentences that had been handed down
> AND the fact that your co-defendants could be called by the Prosecution
> as witnesses against you at trial and that your co-defendants would likely
> testify against you."

(Doc. No. 323, Ex. C. at pp. 35-36.)

There is nothing in the record to corroborate Arias's contention that Mr. Skinner wholly

failed to go over the facts of the case with him.  In fact, the exhibits Arias himself attaches to his

motion show Mr. Skinner did just the opposite.  Throughout his representation, Mr. Skinner

promptly and professionally responded to all inquiries and correspondence by Arias and his

family members.  (*See* Doc. No. 323, Ex. B at pp. 11-24; Ex. C at pp. 35-36.)  The lack of

personal visitation with a client does not necessarily mean an attorney is not working on his client's case.

Finally, Arias argues Mr. Skinner was ineffective because he was denied the right to argue he is eligible for the "safety valve" given that he will deemed a manager or leader in the drug conspiracy which will also prevent him from earning sentence credits under the First Step Act. (Doc. No. 323, p. 15.) Although the ultimate sentencing determination will be by the district court after the presentence report is prepared, there is nothing in either the *Plea Agreement* or *Factual Basis* that indicates to the undersigned that Arias has lost the ability to argue his safety valve eligibility or appropriate role in the offense.[4] This is not to say that Arias *will necessarily* qualify for the safety valve, only that this is not an indication that Mr. Skinner failed to provide close assistance of counsel. Consequently, this factor weighs against withdrawing his guilty plea.

> E. *Carr* Factor Six—Knowing and Voluntary Plea

Arias repeatedly asserted throughout the plea colloquy that his plea was knowing and voluntary. Specifically, Arias confirmed with the court: (1) he understood the charges against him; (2) his plea was voluntary; (3) his plea was not the result of force, threats, or promises by anyone; (4) he participated in discussions with his attorney and the government regarding his plea; (5) he was entering his plea knowingly, freely, voluntarily, and with the advice of counsel and (6) he was pleading guilty because he was, in fact, guilty of the offense. Arias's statements in open court "carry a strong presumption of verity." *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Cothran*, 302 F.3d at 283-84. Additionally, the court provided a litany of

---

[4] At the hearing to withdraw his guilty plea, Arias told the undersigned he learned from other inmates at the jail that in order to qualify for the "safety valve," it must be memorialized in the plea agreement or perhaps in the factual basis.

admonishments and explanations to Arias throughout the hearing, including the elements of the charge, the consequences of his plea, the offense's maximum punishment, and his right to appeal. *See United States v. McFarland*, 839 F.2d 1239, 1242 (7th Cir.), *cert. denied*, 486 U.S. 1014 (1988) ("To deter abuses in the withdrawal of guilty pleas . . . and to protect the integrity of the judicial process, we have held that rational conduct requires that voluntary responses made by a defendant under oath [when entering a guilty plea] . . . be binding."); *United States v. Duran-Espinoza*, No. 5:10-CR-1294-3, 2010 WL 5014341, at *3 (S.D. Tex. Dec. 1, 2010) (finding that defendant's plea was knowing and voluntary based on his responses during the Rule 11 colloquy). Therefore, the court finds that Arias entered his plea knowingly and voluntarily, and this factor, too, weighs against withdrawal.

### III.    Conclusion

Under the totality of the circumstances, the *Carr* factors weigh against permitting Arias to withdraw his guilty plea in this case. Accordingly, Arias's motions (Doc. Nos. 314, 323) should be DENIED.

### IV.    Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) (Supp. IV 2011), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report; and (4) be no more than eight pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and

13

recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 6th day of October, 2020.

_____

Zack Hawthorn
United States Magistrate Judge